UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-349-H

| | |
|---|---|
| THOMAS B. GIVHAN, individually, and the GIVHAN FAMILY PARTNERSHIP, LTD. | PLAINTIFFS |
| V. | |
| CITY OF MT. WASHINGTON, KENTUCKY, and Lajuana Wilcher, in her official capacity as SECRETARY OF THE ENVIRONMENTAL AND PUBLIC PROTECTION CABINET, COMMONWEALTH OF KENTUCKY | DEFENDANTS |

**MEMORANDUM OPINION**

This case arises from a dispute over the operation of a wastewater treatment plant in Mt. Washington, Kentucky and the permit process granting access to that facility's sewers. Among other things, Plaintiffs allege that the Commonwealth of Kentucky (the "Commonwealth") through its agency the Environmental and Public Protection Cabinet (the "Cabinet") has violated federal law in its administration of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (the "CWA"). The Commonwealth and Lajuana S. Wilcher, Secretary of the Cabinet ("Secretary Wilcher") have moved to dismiss because this action violates the Eleventh Amendment of the United States Constitution. The Court will consider Plaintiffs' claims against the Commonwealth and Secretary Wilcher in turn.

I.

Plaintiffs, the Givhans, seek the right to hook up to Mt. Washington's sewer system. Plaintiffs also allege the Commonwealth, through the Cabinet and its Secretary Lajuana S. Wilcher, has failed to adequately remedy Mt. Washington's alleged violations of the Clean Water Act. Under the CWA, municipalities that operate wastewater treatment plants must receive a permit to discharge wastewater into the nation's waterways. The Commonwealth through the Cabinet administers the CWA in Kentucky as well as the permitting process the CWA prescribes.

Mt. Washington's wastewater treatment plant has a capacity of only 900,000 gallons per day but the records of the Division of Water show that for the past several years it has had an average daily flow of 1.1 million gallons per day and an average peak flow of 3.5 million gallons per day. These numbers are significant because the CWA requires wastewater treatment plants covered by the Act be maintained so that discharge from the facility falls within the prescribed range. A wastewater treatment plant running over capacity indicates a higher than permitted rate and may be deemed a violation of the CWA.

Recognizing this problem, Mt. Washington and the Cabinet entered into a consent decree March 17, 2005, allowing Mt. Washington until February 15, 2007, to comply with the Act. In addition, the Cabinet imposed a "sewer sanction" prohibiting any person from hooking up to the Mt. Washington sewer system unless the Cabinet grants a waiver of the sanction for that particular person or sewer hook up. Plaintiffs allege that the Cabinet routinely grants these exemptions robbing the sewer sanction of most if not all of its remedial force. Plaintiffs were denied the right to obtain service. Plaintiffs filed claims against the City of Mt. Washington

alleging violations of the First and Fourteenth Amendments to the United States Constitution and tortious interference with a contract in violation of Kentucky law.

II.

The Eleventh Amendment of the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This protection from suits brought against a state by out-of-state or foreign citizens was extended to suits brought by in-state citizens in 1890. *Hans v. Louisiana*, 134 U.S. 1 (1890). "Eleventh Amendment immunity" while a convenient shorthand is something of a "misnomer" because the sovereign immunity of States "neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). The States enjoyed immunity from suit as a fundamental aspect of sovereignty before the ratification of the Constitution and after. *Id.* Under current law, state sovereign immunity bars federal jurisdiction where a private citizen attempts to sue a state.

There are, however, three qualified exceptions to state sovereign immunity. States enjoy immunity from suit in federal court unless Congress has abrogated the States' immunity or the State has waived its sovereign immunity. *Michigan Peat v. United States Envtl. Protection Agency, et. al.*, 175 F.3d 422, 428 (6th Cir. 1999). In addition, a federal court may enjoin a "state official" from violating federal law. *Ex parte Young,* 209 U.S. 123 (1908).

To abrogate the sovereign immunity of the states through statute, Congress must meet two conditions. First, Congress must state clearly that it intends a statute to abrogate state sovereign immunity. *Lawson v. Shelby Cty, Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000)(citing

3

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996)). Second, Congress must have acted "pursuant to a valid exercise of power." *Id.* In the case of the CWA, the second condition has not been met, thus, Congress has not abrogated the Commonwealth's immunity. *See Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (holding that the only remaining authority under which Congress can abrogate state sovereign immunity is section 5 of the Fourteenth Amendment). As the Sixth Circuit noted in *Michigan Peat*: "[c]learly, Congress has not attempted to abrogate Eleventh Amendment immunity by enacting the CWA which was promulgated under Article I powers, not pursuant to the Fourteenth Amendment." 175 F.3d at 428.

Whether the Commonwealth has consented to suit here or has otherwise waived its immunity is less clear. Consent to suit may occur in several ways. A state may expressly waive immunity from suit for money damages in court. *Thiokel Corp. v. Department of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). A voluntary appearance and defense on the merits in federal court without objection to the court's lack of jurisdiction may also be deemed consent to suit. *Clark v. Barnard*, 108 U.S. 436 (1883). Theoretically at least consent may result when a state agrees to administer a federal-state program that imposes certain federal standards upon the state though, thus far, consent to suit on this basis has never been found. *Lawson,* 211 F.3d at 334 (citing *Atascardero State Hospital v. Scanlon*, 473 U.S. 234, 247 (1985)).

The Sixth Circuit in *Michigan Peat* held that the fact that Michigan had volunteered to involve itself in the Section 404 program of the CWA did not constitute consent to be sued in federal court. 175 F.3d at 429 (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (requiring

4

that such a waiver be "unequivocally expressed")). In this case, the Commonwealth administers the CWA. Plaintiffs recognize that courts have generally rejected claims of an implied waiver of state sovereign immunity. However, they urge this Court to find that where a state has acted as an agent of the federal government in administering a federal statute and in issuing a federal permit, the state should not be immune from suit in federal court. The Court acknowledges this argument has some logical force. Nevertheless, to so find would conflict with the Sixth Circuit's holding that a state's consent to waive sovereign immunity must be unequivocal. For instance, the Sixth Circuit found a waiver of state sovereign immunity accompanying the receipt of federal funds under the Rehabilitation Act which expressly provides "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7; *Nihiser v. Ohio Envtl. Protection Agency*, 269 F.3d 626, 628 (6th Cir. 2001). There is no similarly express waiver provision in the CWA. The Court finds that the Commonwealth has not consented to suit nor was a consent to suit a condition of participation as an administrator of the CWA.

The third exception to the general rule of state sovereign immunity is the doctrine announced in *Ex parte Young* whereby a court may grant prospective nonmonetary relief where a state official is contemplating or engaged in ongoing violations of federal law. 209 U.S. 123 (1908). The rationale underlying this exception is that where a state official is acting in violation of federal law, a suit against that official cannot be a suit against the state because the official is not acting on behalf of the state when she is acting illegally. Injunctive relief is available under this exception against state officials, not the state itself, who violate federal law. *Pennhurst State*

*School & Hospital v. Halderman*, 465 U.S. 89 (1984). In this case, because the *Ex parte Young* exception applies only to prospective nonmonetary relief, Secretary Wilcher is immune from any claim for retroactive relief or damages. The Givhans' claims against the Commonwealth are also barred by the state's sovereign immunity.

The Givhans' claims against Secretary Wilcher, however, for prospective injunctive and declaratory relief should not be dismissed. Defendants argue that because Secretary Wilcher was named in her official capacity she is, like the Commonwealth, immune from suit. The Court respectfully disagrees. Moreover, under the legal fiction of *Ex parte Young*, state officials engaged in illegal activity are stripped of their character as agents of the state. A suit against Secretary Wilcher in her official capacity falls into this exception even if the legal fiction of the exception provides that if acting illegally she could not have been acting as an agent of the state.

Defendants argue in the alternative that even if the Court finds it has jurisdiction over the claims against Secretary Wilcher, Plaintiffs have failed to state a claim upon which relief may be granted. The citizen-suit provision of the CWA, 33 U.S.C. § 1365, they contend, does not support a suit against Secretary Wilcher who administers the Act; it only supports suits against the wastewater treatment plants that operate in violation of the CWA. This argument was raised in the Defendants' Reply to Plaintiffs' Response to this Motion to Dismiss. It may well have merit. Because there remain factual matters in dispute and because the Defendants have not met their burden of proving as a matter of law that Plaintiffs' have failed to state a claim upon which relief may be granted, this issue is not appropriate for a motion to dismiss at this time. Claims against Secretary Wilcher for prospective nonmonetary relief should go forward because they fall under the *Ex parte Young* exception to state sovereign immunity.

       The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record